

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00180-CV

## IN THE INTEREST OF R.R., A CHILD

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2012-4838-3**

## MEMORANDUM OPINION

Seacrela and William[1] appeal from a judgment terminating their parental rights

to their child, R.R., who had been removed by the Department of Family and Protective

Services.  *See* TEX. FAM. CODE ANN. § 161.001 (West 2008).  On appeal, William

complains only that the evidence was legally and factually insufficient to support the

jury's findings as to three separate predicate grounds for termination of his parental

rights to R.R.  *See id*. § 161.001(1)(D), (E), (O).  Seacrela complains only that the evidence

was legally insufficient to support the jury's finding that termination of her parental

rights was in the best interest of R.R.  *See id*. § 161.003(a)(5).  Because we find that the

---

[1]We use the appellants' first names only in order to protect the identity of the child.  *See* TEX. R. APP. P.
9.8(b)(1)(B).

evidence was legally and factually sufficient to support the jury's findings as to section 161.001(E) and that termination was in R.R.'s best interest, we affirm the judgment of the trial court.

**BURDEN OF PROOF**

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the Department is required to establish one predicate ground listed under subdivision (1) of the statute and prove that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1) (West 2008); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

**LEGAL AND FACTUAL SUFFICIENCY**

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id*. We must also

disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* Further, we must consider undisputed evidence even if it is contrary to the finding. *Id.*

In a factual sufficiency review, we must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To determine if the evidence is factually sufficient, we give due deference to the factfinder's findings and determine whether, on the entire record, the factfinder could reasonably form a firm conviction or belief that the parent committed an act that would support termination and that termination of the parent's parental rights would be in the child's best interest. *In re H.R.M.*, 209 S.W.3d at 108; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

Only one predicate ground of termination is necessary for a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

**FAMILY CODE SECTION 161.001(E)**

In his second issue, William argues the evidence is legally and factually insufficient to prove the jury's finding of predicate ground (E) of section 161.001. Specifically, he contends there is no evidence that he, personally, endangered R.R.

Section 161.001(E) of the Texas Family Code allows termination of the parent-child relationship if the parent, "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being

of the child." TEX. FAM. CODE ANN. § 161.001(E) (West Supp. 2012). "Endanger" means "to expose to loss or injury; to jeopardize." *Texas Department of Human Services . v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the children's physical or emotional well-being. *See id.* at 534. Further, the conduct need not occur in the child's presence. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We have held that evidence is legally and factually sufficient to support endangerment where a parent had been a drug dealer immediately prior to his arrest, conviction, and imprisonment for dealing drugs. *See In re R.M.*, No. 10-13-00330-CV, 2014 Tex. App. LEXIS 1921, *4-5 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.). Further, a long history of drug use and irresponsible choices by a parent constitutes some evidence of endangerment under subsection (E). *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

Since 1998, William had spent over 10 years in prison. He had been convicted for robbery, possession of a controlled substance, and possession of a controlled substance with the intent to deliver. Four months prior to R.R.'s birth, William admitted to selling drugs in an apartment where another individual was then shot and killed in William's presence. William admitted to being a drug dealer and conceded that drug dealing can be dangerous. Further, William was in prison at the time of trial and had been there

since January of 2012. His projected release date was in 2018. He was eligible for parole in June of 2014, but had been denied parole two times previously.

Using the appropriate standards for determining the sufficiency of the evidence, we find that the evidence was legally and factually sufficient to support the jury's finding pursuant to section 161.001(1)(E). Accordingly, William's second issue is overruled. Because we have found the evidence sufficient to establish one predicate ground for termination, we need not address the sufficiency of the evidence relating to sections 161.001(1)(D) or (O). William's issues one and three are overruled as well.

## BEST INTEREST—HOLLEY FACTORS

In Seacrela's sole issue, she contends the evidence is legally insufficient to support the jury's finding that terminating her parental rights was in R.R.'s best interest.

There are several factors that the trier of fact in a termination case may consider in determining the best interest of the child, which include: (a) the desires of the child, (b) the emotional and physical needs of the child now and in the future, (c) the emotional and physical danger to the child now and in the future, (d) the parental abilities of the individuals seeking custody, (e) the programs available to assist these individuals to promote the best interest of the child, (f) the plans for the child by these individuals or by the agency seeking custody, (g) the stability of the home or proposed placement, (h) the acts or omissions of the parent which may indicate that the existing

parent-child relationship is not a proper one, and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Some listed factors may be inapplicable to some cases while other factors not on the list may also be considered when appropriate. *Id*.

### The desires of the child

At the time of trial, R.R. was 25 months old. She had been removed from Seacrela's care at 7 months old. While R.R. is too young to express her desires, we note that there was evidence in the record that she bonded well with her second foster family who wanted to adopt her. At the time of trial, R.R. had been residing with this family for 7 months. For the first two months R.R., was in foster care, Seacrela did not visit her. Seacrela then visited 11 times before she was sent to prison for a violation of her probation.

### The emotional and physical needs of the child now and in the future
### The emotional and physical danger to the child now and in the future

R.R. is a well-adjusted child and had no special needs at the time of trial.

Seacrela was not R.R.'s primary care-giver when the Department removed R.R. from Seacrela's possession. Seacrela allowed another person, the mother of one of William's five other children, to be R.R.'s primary caregiver. This person was not approved as a placement for R.R. when R.R. was removed.

Further, on the day R.R. was removed, Seacrela had smoked marijuana in the morning, an hour or two before being given R.R. to take care of for the remainder of the day. When a representative from the Department contacted Seacrela at 4:00 p.m. that same day, Seacrela appeared to still be under the influence of marijuana, the apartment smelled of marijuana and cigarettes, R.R. smelled of cigarettes, and R.R.'s room was a mess. The apartment belonged to Seacrela's cousin. Seacrela testified at trial that when paroled from prison she would return to this same apartment.

Seacrela's cousin testified that she would be willing to allow Seacrela and R.R. to live with her. The cousin further testified that she did not know, but had heard, that Seacrela had smoked marijuana prior to R.R.'s removal, disputed that her home smelled of marijuana on the day of the removal, and acknowledged that the Department did not approve of her as a placement for R.R.

Seacrela testified that she and William would like to marry. William had been in prison the entirety of R.R.'s life. He dealt drugs prior to him being incarcerated. At the time of trial, William was up for parole in a month, but had been rejected twice before; so there was no guarantee that he would be released any time soon.

*The programs available to promote the best interest of the child*
*The plans for the child by the individuals or the agency seeking custody*
*The acts or omissions of the parent, and any excuse for the acts or omissions*

Seacrela minimally worked at her family plan prior to her arrest for a probation violation. She was arrested 5 months after R.R. was removed from her care and was

still in prison at the time of trial. Her excuse for not fully participating in her family plan was that an arrest warrant for her was outstanding during that time. Seacrela's only plan for R.R. was to have R.R. wait for her release from prison and wait for her to get her life in order. Seacrela's plans for herself included moving in with a cousin who the Department did not approve of and marrying R.R.'s father whose parental rights to R.R. have now been terminated for endangerment. The Department planned for R.R.'s adoption by the foster family if Seacrela's and William's parental rights were terminated.

*Summation*

After a review of all the evidence under the appropriate standards, we find the evidence was legally sufficient to prove that termination of Seacrela's parental rights to R.R. was in R.R.'s best interest. Seacrela's sole issue is overruled.

**CONCLUSION**

Having overruled each issue raised by William and Seacrela on appeal, we affirm the trial court's judgment.[2]

TOM GRAY
Chief Justice

---

[2] In this proceeding the appellants were determined to be indigent and allowed to proceed without the advance payment of cost. *See* TEX. R. APP. P. 20.1. The ability to proceed without the advance payment of cost does not, however, mean that the costs are not owed by an unsuccessful appellant. *See In re McGowan*, No. 10-10-00208-CV, 2010 Tex. App. LEXIS 5046 (Tex. App.—Waco June 30, 2010, orig. proceeding) (mem. op.). Because we have affirmed the judgment of the trial court, and thus ruled against the appellants in this appeal, the judgment of the Court will award the appellee the appellate cost paid by the appellee, if any, and all unpaid cost of the appeal will be taxed, jointly and severally, against the appellants. The Clerk of this Court is hereby ordered to write off all unpaid filing fees for this proceeding from the accounts receivable of the Court. The write off, however, in no way eliminates or reduces the fees owed by the appellants pursuant to the Court's judgment.

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 2, 2014
[CV06]

